# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| JANIS K. WATERS,<br>                    Appellant, | DOCKET NUMBER<br>AT-0752-10-0197-X-1 |
| v. | |
| DEPARTMENT OF<br>    TRANSPORTATION,<br>                    Agency. | DATE: August 25, 2014 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[*]

Cathy A. Harris, Esquire, Washington, D.C., for the appellant.

Kerrie D. Riggs, Washington, D.C., for the appellant.

Parisa Naraghi-Arani, Esquire, Washington, D.C., for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1      On May 14, 2013, the administrative judge issued a compliance initial decision finding the agency noncompliant with the Board's November 7, 2012

---

[*] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

final order, which required the agency to pay the appellant back pay and benefits following the cancellation of her removal. MSPB Docket No. AT-0752-10-0197-C-1, Compliance File, Tab 11, Compliance Initial Decision (CID). For the reasons discussed below, we find the agency in compliance and DISMISS the petition for enforcement.

## DISCUSSION OF ARGUMENTS AND EVIDENCE ON COMPLIANCE

¶2 On November 7, 2012, the Board issued a final order requiring the agency to cancel the appellant's removal and pay her back pay and benefits. *See* CID, at 1. The appellant petitioned for enforcement and on May 14, 2013, the administrative judge issued an initial decision finding the agency in noncompliance. The administrative judge ordered the agency to take the following actions:

1. Set forth the gross amount of back pay due the appellant and show how that amount was determined;

2. Set forth the amount and reason for all deductions, reductions, and offsets from the gross back pay amount;

3. Set forth the source and amount of all checks or electronic payments issued to the appellant and provide evidence that the appellant actually received them;

4. Set forth the amount of interest on back pay due the appellant and explain how this amount was calculated; and

5. Provide evidence that the agency properly restored the appellant's annual leave, sick leave, and Thrift Savings Plan accounts.

CID at 8-9.

¶3 The parties subsequently filed various submissions addressing these actions. MSPB Docket No. AT-0752-10-0197-X-1, Compliance Referral File (CRF), Tabs 1, 3-4, 6-8, 11. On September 30, 2013, the appellant filed a submission narrowing the issues to the following:

1.  Pay for pay periods 22 of 2010 through 1 of 2011;

2.  Interest due on pay for pay periods 5 through 11 of 2011;

3.  Restoration of sick and annual leave; and

4.  Retroactive restoration of the appellant's health benefits.

CRF, Tab 8 at 5-6.

¶4    On December 23, 2013, the Board issued an order finding the agency in partial compliance. Specifically, the Board found the agency compliant regarding the back pay and interest for the periods set forth above but noncompliant concerning restoration of sick and annual leave and restoration of health benefits. CRF, Tab 12 at 3-5. The Board ordered the agency to explain how it calculated and paid the appellant's annual and sick leave. *Id.* at 6. The Board also ordered the agency to provide evidence that it had contacted the appellant's insurer and corrected the error that led to her apparent lapse in coverage. *Id.* Both parties filed responses to the order. CRF, Tabs 15-19.

¶5    When the Board finds a personnel action unwarranted or not sustainable, it orders that the appellant be placed, as nearly as possible, in the situation he would have been in had the wrongful personnel action not occurred. *House v. Department of the Army*, 98 M.S.P.R. 530, ¶ 9 (2005). The agency bears the burden to prove its compliance with a Board order. An agency's assertions of compliance must include a clear explanation of its compliance actions supported by documentary evidence. *Vaughan v. Department of Agriculture*, 116 M.S.P.R. 319, ¶ 5 (2011). The appellant may rebut the agency's evidence of compliance by making "specific, nonconclusory, and supported assertions of continued noncompliance." *Brown v. Office of Personnel Management*, 113 M.S.P.R. 325, ¶ 5 (2010).

Restoration of Sick and Annual Leave

¶6    The appellant asserts that the agency owes her an additional 22 hours of

leave (or payment for these hours) because her leave and earnings statement for the relevant time period shows that she is owed 128 hours, while the agency's explanation of its leave calculations shows that she is owed 106 hours. CRF, Tab 8 at 6. On December 23, 2013, the Board ordered the agency to explain its calculations and to address this discrepancy. CRF, Tab 12 at 4.

¶7    The agency submitted a "leave audit statement" supporting its claim that the appellant was owed 106 hours. CRF, Tab 15 at Exhibit (Ex.) E. The leave audit statement appears to be mathematically correct and supports the agency's contention that it owed the appellant 106 hours of annual leave. In particular, the agency's calculations show that, on the date the appellant retired, she had a balance of 515.5 hours of annual leave and a negative sick leave balance of -46 hours. *Id.* The agency subtracted the negative sick leave balance from the annual leave balance, leaving the appellant with 469.5 hours of annual leave to be paid as a lump sum upon retirement. *Id.* Nevertheless, the agency erroneously paid her for only 363.5 hours. *Id.* The agency therefore owed (and subsequently paid) her the difference of 106 hours.

¶8    However, the agency also submitted a leave and earning (L&E) statement for the appellant dated February 23, 2013—apparently, the date the agency paid her for the 363.5 hours of annual leave—which appeared to show a balance of 128 hours of sick leave (versus the -46 hours shown on the leave audit). *Id.* The appellant contends that the agency owes her the difference between the 106 hours it paid her and the 128 hours shown on her L&E statement. CRF, Tab 16 at 5.

¶9    On June 10, 2014, the agency submitted a sworn declaration by a Payroll Program Specialist, averring that the L&E statement submitted by the agency (showing a positive sick leave balance of 128 hours) was incorrect. CRF, Tab 18 at 4. She stated that the L&E statement did not reflect the manual adjustments made for the leave audit nor the manual computation of the appellant's leave balances. She further stated that a manual leave audit takes precedence over the

automated leave display on the L&E statement, which was not updated to reflect the manual audit because the appellant had retired. *Id.* at 4-5.

¶10 The appellant disputed the agency's submission, contending that the agency failed to explain why the L&E statement was incorrect. CRF, Tab 19 at 7. We disagree. The agency explained that the L&E statement was incorrect because it had not been updated to reflect the manual leave audit—which, as noted above, appears mathematically correct. Because the agency submitted this explanation in the form of a sworn declaration, which the appellant has not specifically rebutted, we credit the agency's explanation. We find that the agency correctly paid the appellant for the hours owed, as reflected on the leave audit statement; that the agency did not owe the appellant the additional 22 hours reflected on the L&E statement; and that the agency therefore is in compliance on this issue.

Retroactive Restoration of Health Benefits

¶11 The Board instructed the agency to provide evidence that it had contacted the appellant's insurer to ensure that her health benefits were retroactively restored. CRF, Tab 12 at 5. On January 13, 2014, the agency submitted a signed statement from a Human Resources Specialist to the effect that she had contacted the appellant's insurer and confirmed that the appellant had active health insurance coverage from 1987 to the present. CRF, Tab 15 at 1 & Ex. A. The Specialist stated that the insurer refused to provide the agency a certificate of coverage for the appellant but would provide one to the appellant upon request. *Id.*

¶12 On January 27, 2014, the appellant stated that she had contacted her insurer and that the insurer was in the process of fixing the coverage oversight issue. CRF, Tab 16 at 4. The appellant further stated that, if she could not resolve the issue with the insurer, she would so inform the Board. *Id.* To date, the appellant has not filed any additional submissions on this issue. Accordingly, we find the agency in compliance on this issue.

¶13   Having found the agency fully compliant on the two issues remaining after the December 23, 2013 order, we dismiss the petition for enforcement.  This is the final decision of the Merit Systems Protection Board in this compliance proceeding.  Title 5 of the Code of Federal Regulations, section 1201.183(c)(1) (5 C.F.R. § 1201.183(c)(1)).

### NOTICE TO THE APPELLANT REGARDING
### YOUR RIGHT TO REQUEST
### ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your attorney fees motion with the office that issued the initial decision on your appeal.

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline

and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:          _____
                        William D. Spencer
                        Clerk of the Board

Washington, D.C.